UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VILEYBY B.R., | No. 1:26-cv-00512-TLN-AC |
| Petitioner, | |
| v. | **ORDER** |
| TODD M. LYONS, et al., | |
| Respondents. | |

This matter is before the Court on an order to show cause why a preliminary injunction should not issue (ECF No. 11) after granting Petitioner Vileyby B.R.'s[1] ("Petitioner") Motion for a Temporary Restraining Order ("TRO") (ECF No. 7).  Respondents filed an opposition.  (ECF No. 13.)  Petitioner filed a reply.  (ECF No. 14.)  For the reasons set forth below, the Court issues a preliminary injunction.

///

///

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only her first name and last initials, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner is an asylum seeker from Guatemala.  (ECF No. 1 at 2.)  She entered the United States on November 6, 2021, and was apprehended by the Department of Homeland Security at the border.  (*Id.*)  On November 8, 2021, Petitioner was released into the United States on an Order of Release on Recognizance.  (ECF No. 3-1 ¶ 5; ECF No. 3-6.)

Petitioner settled in Bakersfield with her husband and four-year-old son.  (ECF No. 3-1 ¶ 6.)  As part of the conditions of her release, Petitioner enrolled in the Alternatives to Detention program and was required to attend appointments with Immigration and Customs Enforcement ("ICE").  (*Id.* ¶ 5.)  Petitioner maintains that she never missed an ICE check-in, court appearance, or otherwise violated the terms of her release.  (*Id.* ¶ 8.)  Petitioner has no criminal record.  (*Id.*)  On November 7, 2022, Petitioner applied for asylum.  (*Id.* ¶ 3.)  Her application was denied on July 28, 2025, and she appealed to the Board of Immigration Appeals.  (*Id.*)  Petitioner's appeal remains pending, and she has no final order of removal.  (*Id.*; ECF No. 1 at 11.)

On October 28, 2025, Petitioner went to the ICE facility in Bakersfield for her routine check-in.  (ECF No. 1 at 11.)  She was suddenly detained.  (*Id.*)  ICE did not provide justification.  (*Id.*)  She had no prior notice or warning that she would be detained.  (*Id.* at 2.)  Petitioner was then transferred to the California City Detention Facility.  (ECF No. 3-1 ¶ 6.)  On November 26, 2025, Petitioner filed a motion to redetermine bond.  (*Id.* ¶ 7.)  An Immigration Judge denied the motion for lack of jurisdiction on December 4, 2025.  (*Id.*)

On January 21, 2026, Petitioner filed a petition for writ of habeas corpus challenging her detention as violating her due process rights.  (ECF No. 1.)  Petitioner also filed a motion for a TRO.  (ECF No. 7.)  On January 22, 2026, this Court granted Petitioner's request for a TRO and ordered her immediate release.  (ECF No. 11.)  The Court further enjoined and restrained Respondents from re-arresting or re-detaining Petitioner absent compliance with constitutional protections.  (*Id.*)  The Court now determines whether the relief provided in the TRO should continue as a preliminary injunction.

---

[2]    These facts come from Petitioner's habeas petition and motion for TRO.  (ECF Nos. 1, 3–3-6, 7.)  Respondents do not dispute these facts.  (*See generally* ECF No. 13.)

## II.   STANDARD OF LAW

For a preliminary injunction to issue, courts consider whether Petitioner has established "[1] that [she] is likely to succeed on the merits, [2] that [she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to issue a preliminary injunction. *Id.* at 1134–35.

## III.   ANALYSIS

### A.   Likelihood of Success on the Merits

As the Court already found, Petitioner has established a likelihood of success on her due process claim. (ECF No. 11.) The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

3

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.        Liberty Interest

"Freedom from imprisonment — from government custody, detention, or other forms of physical restrain — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Id.* (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether a specific individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a protected liberty interest in her continued freedom when she was released from immigration custody on her own recognizance and allowed to reside in the United States for approximately four years. (ECF No. 3-1 ¶ 5; ECF No. 3-6.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of her immigration proceedings if she abided by the terms of her release. Petitioner indeed complied with all conditions of release, did not miss any ICE check-ins, and has no criminal record. (ECF No. 3-1 ¶ 8.) Respondents do not dispute this. (*See generally* ECF No. 13.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in her continued freedom as she awaits the outcome

of her immigration and asylum proceedings.  *See*, *e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondents identify no authority for Petitioner's detention.  (*See generally* ECF No. 13.) Instead, in response to the order to show cause, Respondents only assert generally that "the detention authority in this case is lawful under the Constitution and applicable provisions of the Immigration and Nationality Act."  (*Id.* at 1.)  In the absence of substantive argument to the contrary, and for the reasons set forth above, the Court finds Petitioner has a liberty interest in her continued freedom protected by the Due Process Clause.

ii.    *Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution.  The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention.  Petitioner lived in the United States for approximately four years and established a life in Bakersfield with her husband and son. (ECF No. 3-1 ¶¶ 4–6.)  The time Petitioner spent released on recognizance and the life she appears to have built in that time have created a powerful interest in her continued liberty.  *See Doe*, 787 F. Supp. 3d at 1093–94 (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the risk here is considerable as Petitioner has received virtually no procedural safeguards such as a bond or

5

custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("*R.D.T.M.*"). Petitioner has no criminal history and was released on recognizance after the Government determined she posed little if any flight risk or danger to the community. (ECF No. 1 at 2, 11.) After she was detained by ICE, Petitioner requested a bond hearing and that request was denied. (ECF No. 3-1 ¶ 7.) The risk that Petitioner has been erroneously deprived of her liberty by Respondents' lack of process is therefore significant.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to a final order of removal, she has consistently appeared at her ICE check-ins and court hearings, and Respondents have identified no legitimate interest in detaining her. (ECF No. 1 at 11; ECF No. 3-1 ¶ 8; *see generally* ECF No. 13.)

The cost and time of procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents, and any delay in re-detention (if justified) for time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on her immigration proceedings than to continue to detain her. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

In their response to the order to show cause, Respondents admit they "do not have legal arguments to distinguish this case from previous orders issued by the Court, nor do Respondents identify material factual differences between this case and those identified by the Court in the

6

Order to Show Cause." (ECF No. 13 at 1.)  The case cited in the Order to Show Cause was *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841 (E.D. Cal. Dec. 11, 2025).  There, this Court found Respondents' interest in placing the petitioner in detention without a hearing was low and did not outweigh the petitioner's substantial liberty interest or the risk of erroneous deprivation of liberty. *Morales-Flores*, 2025 WL 3552841 at *6.  Due process thus required that the petitioner receive a hearing before a neutral decisionmaker that complies with 8 U.S.C. § 1226(a) and related laws and regulations if he were to be re-detained. *Id.*  In light of Respondents' admission, the Court adopts that same finding to the facts presented here.

Thus, on balance, Petitioner was owed notice and hearing before a neutral decisionmaker prior to re-detention.  She was denied this process.  Accordingly, Petitioner has shown she is likely to succeed on the merits of his due process claim.

B.    Irreparable Harm

Petitioner has also established she will suffer irreparable harm in the absence of preliminary relief.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here. (ECF No. 1 at 12.)  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while she awaits a determination on her immigration and asylum proceedings.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").  In addition to harms imposed by detention, Petitioner has shown she is likely to succeed on the merits of her constitutional claim.  The Court thus finds Petitioner has demonstrated irreparable harm.

C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court issues a preliminary injunction as set forth below.

D.    Request for Extended Briefing

Finally, the Court declines Respondents' request for a 180-day extended briefing schedule to oppose Petitioner's habeas petition.  (ECF No. 13 at 2.)  Respondents are capable of presenting "informed briefing" on the schedule set forth below, particularly as they admit they do not have legal arguments to distinguish this case from previous orders of this Court.  (*Id.*)  The Court has found Petitioner is likely to succeed on the merits of her constitutional claim and will not delay issuing relief on the prospect that an appeal in a different matter could have precedential effect at some point in the future.

IV.    **CONCLUSION**

The Court issues a preliminary injunction.  Respondents are ENJOINED AND RESTRAINED from imposing additional restrictions on Petitioner's terms of release, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  Respondents are further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a

pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

Respondents are ORDERED TO SHOW CAUSE why this Court should not enter final judgment on the merits of Petitioner's habeas petition. Respondents shall file responsive papers within **five court days** from the date of this order. Petitioner may file a reply, if any, within **eight court days** from the date of this order. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: February 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

9